### In re BLACKSTAFF ENGINEERING CO.

(District Court, S. D. Georgia, W. D. December 5, 1912.)

BANKRUPTCY (§ 348*)—LABOR CLAIMS—LIENS—PRIORITY.

> Where services of laborers contributed to enhance the assets of the bankrupt, they were entitled to a prior lien therefor, and to be paid in full.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Blackstaff Engineering Company. Intervention of E. B. Herring and others, claiming laborers' liens. Sustained.

Oliver C. Hancock, of Macon, Ga., for interveners.

R. S. Wimberly, of Macon, Ga., for receiver.

SPEER, District Judge. This is an application by certain laborers, whose work contributed to enhance the assets of the Blackstaff Engineering Company, for priority of payment; the company having become bankrupt. The liens of the laborers were ascertained and foreclosed in the state court. The judgments there given were to—

| | |
|---|---:|
| E. B. Herring | $ 84 40 |
| C. J. Paramore | 120 00 |
| L. D. Howard | 76 20 |
| J. E. Howard | 66 00 |
| T. H. Doyle | 36 50 |
| Pleas Henderson | 29 25 |
| A. A. Stewart | 60 00 |
| George Gardner | 37 50 |
| Cliff Burch | 30 00 |
| Seymore McCord | 15 00 |
| Will Alslan | 14 85 |
| Hill Griggs | 7 50 |
| Lum Maxwell | 15 15 |
| Jim Clay | 15 00 |
| Ernest Reed | 17 60 |
| Irah Green | 14 15 |
| Green Johnson | 18 30 |
| Preston Reeves | 13 50 |
| Jack Gibson | 15 00 |
| Roy Reed | 7 50 |
| John Glenn | 40 00 |
| Jim Bell | 14 75 |
| Mal Crowder | 29 00 |
| John Berner | 25 00 |
| Dave White | 25 00 |
| Will Evans | 15 00 |
| Sol Montgomery | 8 00 |
| Will Malone | 15 00 |

When the judgments were presented here, they were referred to the master, and were found to be correct. No exceptions were made

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the master's report, and it was confirmed. The immediate payment of the sums thus ascertained and a priority over the claims of all other creditors is asserted. The question was before this court and carefully considered in Re Erie Lumber Co. (D. C.) 150 Fed. 817. We there used the language following:

"The protection of the wages of labor is a primary duty of society and of government. The wage-earner constitutes an immense proportion of those who labor for the common welfare. So long as he remains helpful and self-sustaining, every prosperous result follows. In those unhappy epochs when the individual laborer is helpless, he, and those dependent upon him become a charge upon the public. When labor en masse becomes helpless, when it is no longer possible to earn the means of subsistence, government itself is threatened, and revolution has often followed. It is therefore profoundly and philosophically true that it is the duty of government in every contingency to secure his earnings to the wage-earner. This truth is at the basis of those laws which attempt to accomplish the result upon which the existence of orderly society may itself depend. National and state legislation sedulously attempt to accomplish this, and otherwise to ameliorate the condition of the laboring man. The courts with equal solicitude strive to attain the same end. In his admirable work on Bankruptcy Mr. Brandenburg declares: 'It may be generally stated that labor claims are entitled to priority and payment in full before the discharge of liens against the estate.'"

In that case the priority of such claims was adjudged.

In a more recent case, Guarantee Title & Trust Co. v. Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706, the Supreme Court of the United States adds its paramount authority to the principle, and this, too, when the claim opposing the wage of labor was made by the United States itself. Section 3466 of the Revised Statutes (U. S. Comp. St. 1901, p. 2314) gave to claims of the United States priority over the wages of labor due by a bankrupt estate. This was enacted as early as 1797. But now, in the case cited, the court holds that Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), changes the rule. Mr. Justice McKenna, for the unanimous court, uses the language following:

. "It will be seen, therefore, that by the statute of 1797 (now sec. 3466) and section 5101 of the Revised Statutes all debts due to the United States were expressly given priority to the wages due any operative, clerk, or house servant. A different order is prescribed by the act of 1898, and something more. Labor claims are given priority, and it is provided that debts having priority shall be paid in *full*. The only exception is 'taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality.' These were civil obligations, not personal conventions, and preference was given to them: but as to debts we must assume a change of purpose in the change of order. And we cannot say that it was inadvertent. The act takes into consideration, we think, the whole range of indebtedness of the bankrupt, national, state, and individual, and assigns the order of payment. The policy which dictated it was beneficent, and well might induce a postponement of the claims, even of the sovereign, in favor of those who necessarily depended upon their daily labor. And to give such claims priority could in no case seriously affect the sovereign. To deny them priority would in all cases seriously affect the claimants."

The supreme right of labor, first announced for this district in Re Erie Lumber Co., supra, is now universal wherever the authority of the Supreme Court extends.

For these reasons, the application is granted, and immediate payment ordered.